UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| CHARLIE J. ADAWAY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 4:10CV890 RWS |
| JOHN DOE, et al., | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

Charlie Adaway claims that he was pepper sprayed, assaulted and then denied medical care while an inmate in administrative segregation at Missouri Eastern Reception Diagnostic and Correction Center (ERDCC). In this pro se § 1983 complaint, Adaway brings excessive force and denial of medical care claims against defendants Clifford Campbell, Michael Rotter, Harold Lewis, Kris Kearns, and Debra House. Defendants move for summary judgment on all claims against them. Adaway opposes summary judgment, and the issues have been fully briefed. For the following reasons, defendants are entitled to judgment as a matter of law.

## Standards Governing Summary Judgment

A court may grant a motion for summary judgment only if it finds that all the evidence before it demonstrates "no genuine issue as to any material fact" and

the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden is on the moving party. Id. The court must view all facts and resolve all ambiguities in favor of the non-moving party. Id. However, the non-moving party must set forth specific facts showing that there is sufficient evidence to allow a jury to return a verdict in that party's favor. Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986). Under these standards I review the facts in this case.

## **Background Facts**

On November 14, 2009, Adaway was an inmate in administrative segregation at ERDCC in Bonne Terre, Missouri. During the afternoon head count, Adaway was observed masturbating by defendant House. Later that day, Adaway was issued a conduct violation for engaging in sexual activity and interfering with the inmate count. The conduct violation was read to Adaway by defendant Rotter. Adaway claims that Rotter told him that he would be put on "meal loaf"[1] restriction if he received another violation. Adaway got upset, started arguing with Rotter, and told him to "get his punk ass away from my door."

Rotter then left and House, defendant Lewis, and defendant Kearns

---

[1]"Meal loaf is prepared like meat loaf and consists of meat, vegetables, fruit, potatoes, grains, dairy products and spices." Lott v. Roper, 2006 WL 2038635, *1 n.1 (E.D. Mo. July 19, 2006).

approached Adaway's cell to conduct a search. While standing outside Adaway's cell door, Lewis ordered Adaway at least twice to "cuff-up," or turn around and submit to handcuffs, so that Adaway's cell could be searched.[2] In his deposition, Adaway admitted that he told them, "No," and then covered his cell window with paper so that the guards could not see inside his cell. Adaway knew that refusing to "cuff-up" when ordered and obstructing the view inside his cell were conduct violations. Adaway testified that after he covered his window, he took the sheets off his mattress and put it against the door's food port to prevent the officers from using pepper spray or "grabbing him." Lewis told Adaway to submit to restraints or he would use force, but he did not specify what type of force, ie., pepper spray, would be used.

Adaway again refused to comply and claims that Lewis began to release pepper spray into his cell through the side of the door. Adaway then stuffed his socks into the side of the door to prevent the pepper spray from entering his cell. Some of the spray penetrated his cell, hit the cell door and the wall and caused him to cough. It also got on Adaway's face, chin and chest. Using his towel and water from the sink in his cell, Adaway was able to remove the pepper spray from

---

[2]Inmates who are ordered to "cuff-up" are required to turn their back to the cell door, place their hands behind their back, and then place their hands through the cell door's food port so that officers can handcuff them from outside of the cell.

his face.³

Defendant Lieutenant Campbell then approached Adaway's cell door and ordered him to uncover his window and cuff-up. Adaway peeked through the window, but then covered it back up again and refused to comply. Adaway then told them to "come in here [and] take me out." Adaway's door was then opened and Rotter, Lewis and Kearns rushed into his cell. Lewis pushed Adaway to the ground, and Adaway curled into a ball on the floor of his cell in a fetal position. Adaway claims that Lewis and Rotter punched and kicked him in his side, arm and wrists, and in the back and elbow. Adaway testified that Campbell and House only watched, but that he was unsure whether Kearns kicked him. Adaway was then placed in handcuffs and taken to the restraint bench while his cell was searched.⁴ Adaway was not bleeding and had a scratch on his arm. When asked by Rotter if he was ready to return to his cell, Adaway responded, "Fuck you."

---

³In an effort to evade summary judgment, Adaway submitted an affidavit stating that he was never told to cuff up and submit to a search before he was pepper-sprayed, and that he had "done nothing wrong" to justify the use of force. He also claims that he had not covered up the window into his cell or placed his mattress against the food port until after he had been pepper-sprayed. Adaway cannot create a sham issue of fact and evade summary judgment by contradicting his prior testimony with a later-filed affidavit and opposition brief. Lykken v. Brady, 622 F.3d 925, 933 (8th Cir. 2010). The Court's recitation of events comes directly from Adaway's testimony, and he cannot change his story now in the hopes that the Court will permit his case to go to trial.

⁴The restraint bench is a rectangular, steel bench with slots to secure an inmate to it with handcuffs and leg irons.

Adaway was then placed in his cell. Once in his cell, he pulled his legs through his arms so that his wrists were cuffed in front of him instead of behind him. Adaway was told to stick his hands out of the food port so that his handcuffs could be removed. Adaway refused. Campbell was called back to Adaway's cell. Adaway alleges that Campbell told him that he would use pepper spray if Adaway refused to comply, and Adaway became agitated and told them, "You can't pepper spray me because I'm in restraints." Adaway claims that Campbell then said that they could "beat his ass" instead. Lewis and Kearns then entered Adaway's cell and pushed him against the wall and began to remove the handcuffs. Adaway was struggling so Kearns suggested that Adaway be taken to the ground. At that point, Adaway told them that they could take his handcuffs. The handcuffs were then removed and Adaway was left in his cell.

Adaway claims that he asked Lewis to see the nurse, but that Lewis did not acknowledge him or respond. Adaway admits that at the time he was yelling "all type of stuff [because] I was mad." Adaway claims he asked a guard on the next shift to see the nurse, but he did not get to because he fell asleep. Adaway first testified that never submitted a medical services request (MSR) form to see the nurse, but then he later stated that he "turned in" an MSR but it never got

answered, "so I used hydrocortisone cream" instead.[5] Adaway alleges that he had some bruising, swelling and a knot on his back and side that lasted about one week. Adaway also claims that his elbow hurt for three or four days. He has no permanent injuries from this incident, but he claims that he sometimes has bad dreams about people laughing at him as a result. Adaway seeks $5,000 in damages for pain and suffering, and $5,000 for "federal fees and bills."

## **Discussion**

All defendants move for judgment as a matter of law on Adaway's excessive force claim. There is no dispute that Campbell and House never used force against Adaway, so they are entitled to summary judgment on any claims of excessive force.[6] I will assume for purposes of this motion only that Kearns, Lewis and Rotter used force against Adaway. Defendants contend that the force was used reasonably in a good-faith effort to maintain and restore discipline. I

---

[5]There is no record of this alleged MSR in Adaway's file.

[6]A prisoner may assert an Eighth Amendment claim against a correctional officer who fails to intervene on the prisoner's behalf when the prisoner is attacked by another correctional officer. See Estate of Davis by Ostenfeld v. Delo, 115 F.3d 1388, 1395 (8th Cir. 1997); Buckner v. Hollins, 983 F.2d 119, 122 (8th Cir. 1993). The question is whether the officer's inaction amounts to deliberate indifference to a substantial risk of serious harm to the prisoner. Id. at 122. An officer's liability is dependent on whether there was time to intervene. Putnam v. Gerloff, 639 F.2d 415, 423-24 (8th Cir. 1981). Adaway's complaint does not allege failure to protect claims against Campbell and House, but even if it did these defendants would still be entitled to summary judgment as the underlying excessive force claim fails. See id. At 423-24 (no failure to protect claim where underlying use of force did not violate prisoner's rights).

agree. "The Eighth Amendment bars correctional officers from imposing unnecessary and wanton pain on inmates, regardless of whether there is evidence of any significant injury." Johnson v. Blaukat, 453 F.3d 1108, 1112 (8th Cir. 2006) (citing Hudson v. McMillian, 503 U.S. 1, 9 (1992)). "Officers may reasonably use force in a good-faith effort to maintain or restore discipline but may not apply force maliciously and sadistically to cause harm." Johnson, 453 F.3d at 1112 (internal quotation marks and citation omitted). The test for reasonableness or the good-faith application of force depends on the following:

> whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury.

Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002). The extent of any resulting injury, while material to the question of damages and informative as to the likely degree of force applied, is not in and of itself a threshold requirement for proving this type of Eighth Amendment claim. See Wilkins v. Gaddy, 130 S.Ct. 1175, 1178 (2010) (per curiam).

Here, Lewis was objectively reasonable in releasing pepper spray into Adaway's cell after Adaway -- who had already told Rotter to "get his punk ass

away from my door" -- refused numerous times to cuff up and submit his cell to a search. "Random searches of inmates, individually or collectively, and their cells and lockers are valid and necessary to ensure the security of the institution and the safety of inmates and all others within its boundaries." Hudson v. Palmer, 468 U.S. 517, 529 (1984) (internal citation and quotation marks omitted). Adaway also obstructed the view and access into his cell by covering his window with paper and the food port with his mattress, knowing that these actions were conduct violations. To maintain security and order, officers have a legitimate and compelling need to view an inmate's cell. Adaway was warned of the use of force and had running water to wash his face after the pepper spray was used. Under these circumstances, the use of pepper spray was an objectively reasonable and measured way to gain Adaway's compliance, not sadistic or malicious. See Jones v. Shields, 207 F.3d 491, 495-96 (8th Cir. 2000). As such, Adaway's Eighth Amendment excessive force claim fails.

The same is true for any alleged force used by Kearns, Lewis and Rotter. At the time the correctional officers entered the cell, Adaway had tempered the effectiveness of the pepper spray by stuffing his socks into the side of the door and told them to "come in here [and] take me out." Moreover, they still could not see into Adaway's cell because he continued to obstruct their view. This situation

created the highest degree of risk to the safety of institution and the correctional officers because they were unable to verify if Adaway possessed any weapons or posed a threat of harm to himself or others. Under these circumstances, the use of force was an objectively reasonable and measured way to subdue Adaway, gain his compliance and secure the safety of the institution. Moreover, the nature and extent of force used were not greater than necessary to achieve these legitimate objectives and resulted in only a scratch on Adaway's arm and some bruising.[7] As such, Adaway's Eighth Amendment excessive force claim fails as a matter of law.

Adaway also claims that defendants were deliberately indifferent to his serious medical needs. The Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from "deliberate indifference" to serious medical needs. Vaughn v. Gray, 557 F.3d 904, 908 (8th Cir. 2009). "Deliberate indifference has both an objective and a subjective component." Butler v. Fletcher, 465 F.3d 340, 345 (8th Cir. 2006). The objective component requires a plaintiff to demonstrate an objectively serious medical need. Grayson v. Ross, 454 F.3d 802, 808–09 (8th Cir. 2006). A "serious medical need" is one "that has been

---

[7]That the amount of force used was not excessive is further demonstrated by Adaway's continued recalcitrance after his cell was searched. He told Rotter, "Fuck you" when asked if he would like to return to his cell. Once in his cell, Adaway continued to pose a security risk by maneuvering his handcuffed hands in front of his body and refusing to let the guards remove the cuffs. The guards were forced to enter Adaway's cell a second time to gain his compliance with their instructions.

diagnosed by a physician as requiring treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Coleman v. Rahija, 114 F.3d. 778, 784 (8th Cir. 1997) (quoting Camberos v. Branstad, 73 F.3d. 174, 176 (8th Cir. 1995)).

To satisfy the subjective component of an Eighth Amendment medical claim, a plaintiff inmate must show that the prison officials knew of, yet deliberately disregarded, an excessive risk to the inmate's health. Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997) (quoting Logan v. Clarke, 119 F.3d. 647, 649 (8th Cir. 1997)). "Neither differences of opinion nor medical malpractice state an actionable Constitutional violation." Jones v. Norris, 310 F.3d 610, 612 (8th Cir. 2002).

Defendants argue that Adaway failed to exhaust his administrative remedies with respect to his denial of medical care claim. I agree. Section 1997e(a), as amended by the Prison Litigation Reform Act of 1996, provides that "[n]o action shall be brought with respect to prison conditions under [§ 1983] by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints

internally before allowing the initiation of a federal case." Porter v. Nussle, 534 U.S. 516, 524-25 (2002). "Available grievance procedures must be exhausted even if the relief the inmate seeks under § 1983 was not available through those procedures." King v. Iowa Department of Corrections, 598 F.3d 1051, 1052 (8th Cir. 2010) (citing Booth v. Churner, 532 U.S. 731, 737-41 & n. 6 (2001)). "In Woodford v. Ngo, 548 U.S. 81, 88 (2006), the Supreme Court held that § 1997e(a) requires proper exhaustion, that is, a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." King, 598 F.3d at 1053 (internal quotation marks omitted).

The Missouri Department of Corrections provides an administrative grievance process for prisoners. To initiate the process, the prisoner must file an Informal Resolution Request ("IRR") within fifteen (15) days from the date of the alleged incident. If a prisoner is dissatisfied with the response to an IRR and wishes to pursue his grievance further, he must file an Offender Grievance within seven days of receiving a response to his IRR. If the prisoner does not receive a satisfactory response to his Offender Grievance, he must then file an Offender Grievance Appeal. Only after the prisoner receives a response to his appeal is the administrative grievance procedure considered exhausted.

Although Adaway exhausted the grievance procedures with respect to his excessive force claims, the undisputed evidence demonstrates that he did not file a grievance alleging that he was denied medical care. Contrary to Adaway's argument, filing a grievance about his alleged assault by correctional officers does not exhaust his administrative remedies with respect to his denial of medical care claim. Because Adaway failed to exhaust his administrative remedies, defendants are entitled to summary judgment on his denial of medical care claim. For this reason, I need not and therefore do not consider defendants' alternative arguments that they are entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [#30] is granted.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of June, 2011.